RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0402P (6th Cir.)
File Name: 03a0402p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JUDY GETTINGS,
      *Plaintiff-Appellant
(02-3454),
Plaintiff-Appellee,*

      *v.*

BUILDING LABORERS LOCAL
310 FRINGE BENEFITS FUND,
      *Defendant-Appellee,
Defendant-Appellant
(02-3535).*

Nos. 02-3454/3535

─────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-01223—Donald C. Nugent, District Judge.

Argued: October 24, 2003

Decided and Filed: November 13, 2003

2    *Gettings v. Building*     Nos. 02-3454/3535
      *Laborers Local 310*

Before: DAUGHTREY and GILMAN, Circuit Judges;
HAYNES, District Judge.[*]

─────────────

**COUNSEL**

**ARGUED:** William W. Taylor, Steubenville, Ohio, for Plaintiff. Richard L. Stoper, Jr., ROTATORI, BENDER, GRAGEL, STOPER & ALEXANDER, Cleveland, Ohio, for Defendant. **ON BRIEF:** William W. Taylor, Steubenville, Ohio, for Plaintiff. Richard L. Stoper, Jr., Susan L. Gragel, ROTATORI, BENDER, GRAGEL, STOPER & ALEXANDER, Cleveland, Ohio, for Defendant.

─────────────

**OPINION**

─────────────

RONALD LEE GILMAN, Circuit Judge. Judy Gettings filed a complaint alleging that her employer, the Building Laborers Local 310 Fringe Benefits Fund (the Fund), violated Title VII, ERISA, and the National Labor Relations Act by discriminating against her on the basis of her gender. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment for the Fund as to all claims. In addition, we **VACATE** the district court's denial of attorney fees to the Fund and **REMAND** with instructions that the court reconsider the request and provide a reasoned explanation for its decision.

─────────────

[*] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

# I. BACKGROUND

## A. Factual background

Gettings was hired by the Fund as a secretary/clerk in 1978. The Fund administers health, welfare, pension, and other benefit plans for the members of the Building and Construction Laborers Local Union 310 (the Union). A Board of Trustees, comprised of equal numbers of Union and employer representatives, governs the Fund. In addition to Gettings, five other people were employed in the Fund's office: three clerks, a field auditor, and the fund administrator. Gettings and the three other clerks were members of the Office and Professional Employees International Union (OPEIU), which negotiated their wages and benefits in a collective bargaining agreement with the Fund. Compensation for the field auditor and the fund administrator was set by the Fund's Board of Trustees.

In 1989, the Fund hired Robert Mickshaw, the son-in-law of the Union's business manager, to be the field auditor. Gettings claims that Mickshaw was incompetent and unqualified for this position. Because Mickshaw was purportedly unable to fulfill his duties as the field auditor, Gettings alleges that she and the other clerks trained him to perform their clerical duties. As a consequence, Gettings complains that she and Mickshaw were doing the same kind of work, but that Mickshaw was being paid $35,000 more per year than she was by virtue of his formally holding the position of field auditor. Mickshaw also enjoyed more favorable retirement benefits than Gettings and had access to a Fund-provided car.

## B. Procedural background

In November of 1997, Gettings filed charges with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC), alleging that the Fund was discriminating against her because of her gender. Gettings claims that Mickshaw received a substantially more lucrative compensation package for performing essentially the same work that she did.

On October 1, 1998, the OCRC issued Gettings a probable-cause letter, making a preliminary determination that the Fund had probably engaged in unlawful discriminatory practices. Depositions of Gettings, the fund administrator, and the OPEIU union steward were subsequently taken by an assistant state attorney general on behalf of the OCRC. In her deposition, Gettings admitted that there were significant differences between the duties of a field auditor and the duties of a clerk, and that Mickshaw was performing some field auditor tasks, although, in Gettings's opinion, not very well. Gettings also conceded that *she* did not perform any field auditor duties. She further acknowledged that Mickshaw's duties required that he have access to a Fund-provided car, while her duties did not. Finally, Gettings admitted that her union, OPEIU, had attempted to negotiate retirement benefits similar to those received by Mickshaw, but was unsuccessful. According to Gettings, she withdrew her complaint before the OCRC made any final determination on the merits so that she could proceed in federal court.

The EEOC, meanwhile, had declined to investigate Gettings's charge because the Fund employed less than 15 employees, which is the minimum number for an entity to be considered an "employer" under Title VII. 42 U.S.C. § 2000e(b). On August 24, 2000, the EEOC sent Gettings a letter confirming that her charge of employment discrimination had been withdrawn in accordance with her request. The EEOC letter did not, however, indicate that she had only 90 days within which to bring a civil action pursuant to 42 U.S.C. 2000e-5(f)(1). Gettings filed a complaint in federal district court over eight months later, alleging (1) sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e(17), and Ohio

Revised Code § 4112.02, (2) discrimination under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001-1461, and (3) discrimination based on union membership, in violation of the National Labor Relations Act (NLRA), 29 U.S.C. § 141-187.

At the initial case management conference called by the district court, the Fund indicated that it would soon be filing a motion for summary judgment. The parties also agreed to limit discovery in light of the prior proceedings before the OCRC. After the Fund filed its motion for summary judgment, Gettings requested an additional 60 days in order to conduct discovery before submitting her response. The Fund opposed Gettings's motion because she had failed to comply with the requirement of Rule 56(f) of the Federal Rules of Civil Procedure that such a motion include an affidavit containing a specification of facts to be discovered and an explanation of how the discovered facts would rebut the Fund's motion for summary judgment. Gettings's counsel confirmed at oral argument that he did not file a Rule 56(f) affidavit. At the second pretrial conference, the district court granted Gettings's request for additional time to respond, but stayed discovery pending its ruling on the Fund's motion for summary judgment.

In response, Gettings not only opposed the Fund's summary judgment motion, but also sought leave to amend her complaint to add the Union as a defendant, arguing that the Fund and the Union were in fact a single entity. The district court subsequently granted summary judgment in favor of the Fund and denied Gettings's motion to amend her complaint. Following this ruling, the Fund filed a motion for attorney fees and costs, which the district court denied by a marginal entry without any explanation. Gettings appeals the former decision, and the Fund appeals the latter.

## II.  ANALYSIS

### A.  The district court's stay of discovery

The Fund filed a motion to stay discovery pending the district court's ruling on the Fund's motion for summary judgment. Discovery was stayed by the district court without opinion. Gettings claims that the denial of discovery was manifestly unjust and violated her right to the due process of law. We review a district court's decision to limit discovery under an "abuse of discretion" standard. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999).

"Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Id*. Limitations on pretrial discovery are appropriate where claims may be dismissed "based on legal determinations that could not have been altered by any further discovery." *Musquiz v. W. A. Foote Memorial Hospital, Inc.*, 70 F.3d 422, 430 (6th Cir. 1995). In the present case, the Fund's motion for summary judgment contained the following issues that could be decided as a matter of law: whether the Fund, as a single entity, was an employer as defined under Title VII, whether Gettings stated a claim under ERISA, and whether the NLRB had exclusive jurisdiction over Gettings's unfair-labor-practice claim. We conclude that the district court did not abuse its discretion in making these legal determinations without discovery.

There are, however, two fact-based issues that could have been fleshed out in more detail if discovery had gone forward. First, Gettings might have obtained evidence to support her theory that the Fund and the Union were acting as a single employer. Second, Gettings might have unearthed facts to prop up her claim that Mickshaw's position as the field auditor was a sham. The problem is that Gettings did not comply with Rule 56(f) of the Federal Rules of Civil Procedure, which provides as follows:

Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This court has interpreted Rule 56(f) as requiring a party opposing a summary judgment motion to file an affidavit that "indicate[s] to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000); *see also*, *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (summarizing Sixth Circuit precedent that the nonmoving party must (1) file an affidavit that details the discovery needed, and (2) explain how it will help rebut the movant's showing of the absence of a genuine issue of material fact). Gettings filed no such affidavit.

This court has pointed out that "[t]he importance of complying with Rule 56(f) cannot be overemphasized." *Cacevic*, 226 F.3d at 488. "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Id.* (internal citation omitted). Because Gettings failed to file such an affidavit, the district court did not abuse its discretion in staying discovery pending resolution of the Fund's motion for summary judgment.

## B. The Fund's motion for summary judgment

### 1. Standard of review

We review a district court's grant of summary judgment de novo. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### 2. Prima facie case of gender discrimination under Title VII and Ohio state law

In order to establish a prima facie case of gender discrimination under Title VII, Gettings must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) that she was treated differently from similarly situated members of the unprotected class. *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 402-03 (6th Cir. 1999). Because the prima facie case requirements are essentially the same under Ohio Revised Code § 4112.02, *see Ohio Civil Rights Comm'n v. Ingram*, 630 N.E.2d 669, 672 (Ohio 1994), Gettings's federal and state-law claims of gender discrimination may be disposed of together.

The district court properly determined that Gettings failed to establish a prima facie case for several reasons. First, Gettings did not specifically allege that she suffered an

adverse employment action. She was not terminated, disciplined, or demoted. Nor was she rejected for the field auditor position, since she never applied for it. Second, Gettings does not allege that she was qualified to be a field auditor. Third, Gettings and Mickshaw were not similarly situated. Under Title VII, "the plaintiff *and* the employee with whom the plaintiff seeks to compare . . . herself must be similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original) (internal citation omitted).

The district court correctly observed that Gettings was comparing apples to oranges. Gettings and Mickshaw each held different jobs, with different qualification requirements and duties, and thus had different compensation packages. Gettings admitted as much in her deposition. She acknowledged that she and Mickshaw had different jobs and responsibilities and conceded that Mickshaw did perform some of his field auditor tasks. Gettings's opinion that Mickshaw performed poorly—but was handsomely paid—as the field auditor does not mean that Gettings was being discriminated against with regard to her own employment as a clerk. In sum, she and Mickshaw did not hold positions that were similar in all relevant aspects. We thus find no error in the district court's conclusion that Gettings failed to establish a prima facie case of discrimination under either federal or state law.

### 3. *Gettings's employer for the purposes of the Title VII*

The district court also properly granted summary judgment on Gettings's Title VII claim because the Fund does not satisfy the statutory definition of an employer. An employer, for purposes of Title VII, is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e(b). The district court found that, from 1995 to the

present, the Fund has never had 15 or more employees. Only 6 persons are employed by the Fund. Accordingly, as a matter of law, the Fund was entitled to summary judgment on Gettings's Title VII claim.

Gettings attempted to overcome Title VII's definition of an employer by filing a motion to amend her complaint to add the Union as a defendant. She argued that the Union and the Fund were acting as a single employer. Because the Union has 13 employees and the Fund has 6 employees, their combined workforce would clear the 15-employee statutory hurdle if they were considered a single employer. The district court found that Gettings's motion was moot because, even if the Union and the Fund were indeed a single employer for the purposes of Title VII, Gettings nonetheless failed to establish a prima facie case of gender discrimination. Because we agree with the district court's adjudication on the merits of Gettings's gender discrimination claim, we conclude that the district court properly dismissed as moot Gettings's motion to add the Union as a defendant.

We also note that there is nothing in the record before us to indicate that the Fund and the Union were acting as a single employer. The OCRC examined the operations and management of the Fund and the Union and concluded that the entities were "completely separate" and could not be "merged" to satisfy the EEOC's jurisdictional prerequisites. After considering the appropriate test in this circuit, the district court also concluded that Fund and the Union were separate entities. *See Distillery, Wine & Allied Workers Int'l Union v. National Distillers & Chem. Corp.*, 894 F.2d 850 (6th Cir. 1990) (examining the interrelation of operations, common management, centralized control of labor relations, and common ownership as the key factors in a single-employer analysis).

Because Gettings's failure to file an affidavit under Rule 56(f) ended further development of the record on this point,

we decline to hold that the district court was clearly erroneous in deciding that the Fund and the Union were separate entities. *See Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (stating that this court does not disturb findings of fact unless the district court was clearly erroneous in reaching its conclusion). Gettings's motion to amend her complaint was therefore not only moot, but meritless.

### 4. The district court's alternative basis for dismissing the Title VII claim

An alternative basis for dismissing Gettings's Title VII claim, the district court held, was her failure to meet certain procedural requirements for filing suit in federal court. Usually a person who files a charge with the EEOC that is subsequently dismissed receives notice that she has a right to pursue her claim in federal court. 42 U.S.C. § 2000e-5(f)(1). This typically takes the form of a "right-to-sue" letter, stating that the individual has 90 days from the date of the letter to file a civil complaint in court. Gettings argues that her letter from the EEOC failed to explain this procedural requirement and was not captioned as a "right-to-sue" letter. She thus contends that she should not be penalized for filing her lawsuit over eight months after receiving the EEOC's letter.

The district court pointed out that Gettings was in a no-win situation. If the EEOC letter confirming Gettings's withdrawal of her charge met the statute's requirement that she be given notice of her rights, then she filed her complaint too late. On the other hand, if the EEOC letter was not a "right-to-sue" letter, then Gettings filed her case without receiving clearance to do so. In either case, the district court held that Gettings failed to meet the procedural prerequisites of Title VII. Because the district court's other reasons for granting the Fund summary judgment are sound, we decline to address this alternative basis for disposing of Gettings's Title VII claim.

### 5. The ERISA claim

Gettings's complaint also failed to articulate a claim under ERISA. The district court assumed that Gettings was attempting to argue that she was being discriminated against because she received less favorable retirement benefits or contributions than Mickshaw. But ERISA does not provide a remedy for gender discrimination. ERISA prohibits discrimination in the exercise of rights under an employee benefit plan covered by ERISA. 29 U.S.C. § 1140. Gettings's complaint, however, did not allege that she was being discriminated against in the exercise of her rights under her employee benefit plan, the terms of which were negotiated by her union. Nor did Gettings allege that she had requested and was denied any specific benefit that she is due under her employee benefit plan. Because Gettings failed to state a claim for discrimination under ERISA, the district court properly granted the Fund's motion for summary judgment on this issue. Gettings does not contest this aspect of the district court's holding.

Instead, Gettings has apparently seized on the Fund's interpretation of her ERISA claim as the basis for her appeal. In interpreting Gettings's complaint at the summary judgment stage, the Fund assumed that Gettings was arguing that the Fund's plan did not qualify as a trust entitled to certain tax advantages because it was paying higher benefits to the more highly compensated employees, potentially in violation of 26 U.S.C. § 401(a)(4). The district court disagreed. After a careful review of Gettings's complaint, the district court determined that Gettings was not alleging any cause of action based upon the Fund's purported violation of the Internal Revenue Code.

For the sake of argument, however, the district court assumed that Gettings had standing to assert the ERISA claim as framed by the Fund. It nonetheless concluded that the Fund's plan was a qualified trust under the tax laws. The

court pointed out that in evaluating whether a trust is providing highly compensated employees with more favorable benefits than are being received by other plan members, the tax code instructs that employees covered by collective bargaining agreements are not considered in this comparative analysis. *See* 26 U.S.C. § 410(b)(3)(A).

Gettings now frames her ERISA claim as a dispute over standing. She appeals the district court's supposed ruling that she did not have standing to bring a claim against the Fund's pension plan for violating the tax code. As discussed above, however, the district court did not hold that Gettings lacked standing. To the contrary, the court assumed that Gettings did have standing, but concluded that her claim was without merit. Gettings's unconvincing comeback to the district court's determination on the merits is that her collective bargaining agreement is "of no consequence." Regardless of how Gettings's ERISA claim is framed—as a discrimination issue, a tax violation issue, or a standing issue—the district court properly determined that the Fund was entitled to summary judgment.

### 6. Discrimination based upon union membership

The district court properly determined that it did not have jurisdiction over Gettings's claim that the Fund had engaged in an unfair labor practice by paying her less in wages and benefits than it paid Mickshaw, in alleged violation of 29 U.S.C. § 158. Under the latter provision, an employer engages in an unfair labor practice by discriminating "in regard to . . . any term or condition of employment to encourage or discourage membership in any labor organization." The National Labor Relations Board (NLRB), however, "has been designated by Congress as the exclusive forum of original jurisdiction for adjudicating questions of . . . unfair labor practices . . . and . . . United States District Courts have no such jurisdiction." *Lexington Cartage v. Int'l Brotherhood of Teamsters*, 713 F.2d 194, 195 (6th Cir. 1983).

*See* 29 U.S.C. § 160(a) (empowering the NLRB to prevent any person from engaging in unfair labor practices).

Gettings attempts to circumvent the NLRB's exclusive jurisdiction over this claim by arguing that "OPEIU is not a legitimate collective bargaining unit" and that her membership in OPEIU is a "sham." Even if Gettings is correct, which is not supported by the record, the NLRB still has exclusive jurisdiction over the allegations of unfair labor practices. *See Carpenters District Council v. United Contractors Ass'n of Ohio, Inc.*, 484 F.2d 119, 121-23 (6th Cir. 1973) (holding that even where the collective bargaining agreement is a sham, the NLRB has exclusive jurisdiction over allegations of unfair labor practices). The district court was therefore correct to dismiss this claim for lack of subject matter jurisdiction.

### C. The Fund's motion for attorney fees

#### 1. Standard of review

We now turn to the Fund's cross-appeal, which relates to its request for an award of attorney fees against Gettings. The grant or denial of attorney fees by a district court is reviewed under an "abuse of discretion" standard. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (internal citation omitted). Because the district court denied the Fund's motion for attorney fees by a marginal order without any explanation, it is impossible for us to determine whether the district court committed a clear error of judgment. This court has previously expressed its "disapproval of marginal entry orders" that are contested and dispositive of a substantive issue. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1015 n. 7 (6th Cir. 2003) (criticizing marginal orders because they frustrate appellate review); *see also Bank One v. Abbe*, 916 F.2d 1067,

1082 (6th Cir. 1990) (stating that marginal orders are disfavored because they create difficulties in properly reviewing such dispositions); *United States v. Woods*, 885 F.2d 352, 353-54 (6th Cir. 1989) (complaining that the district court's use of a marginal order complicated and potentially prejudiced appellate review).

A trial judge's exercise of discretion in fee-award cases, although "entitled to substantial deference . . . is not absolute." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (reversing the district court's award of attorney fees because of improper calculation methods). In awarding attorney fees, a "district court must provide a clear and concise explanation of its reasons." *Id*. (internal citation omitted). By the same token, where there is significant evidence in the record to support an award of attorney fees, the district court should provide *some* explanation for its denial of the award rather than simply entering a marginal order. *See Easley v. Value City Stores*, Nos. 91-5288, 91-5317, 1992 WL 3714, at *5 (6th Cir. Jan. 10, 1992) (unpublished opinion) (remanding the employment discrimination action to the district court to provide a statement of reasons explaining why the employer was not entitled to attorney fees when it prevailed on summary judgment); *see also Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (remanding the case to the district court with instructions that the court state its reasons for denying the appellants' motion for attorney fees); *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir. 1983) (same).

### 2. *Evidence supporting an award of attorney fees to the Fund*

"[A] district court may in its discretion award attorney fees to a prevailing defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation. . . ." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (internal citation and

quotation marks omitted). But a "plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset or that the plaintiff continued to litigate after it clearly became so." *Id*. (internal citation and quotation marks omitted) This determination, "requires inquiry into the plaintiff's basis for filing suit." *Id*. (internal citation omitted). Because the district court in the present case used a marginal order, the record does not reveal whether the court engaged in any inquiry concerning the merits of Gettings's claim.

"This court has noted that attorneys' fees should be awarded to defense counsel in Title VII actions only in the most egregious circumstances." *Noyes v. Channel Products, Inc.*, 935 F.2d 806, 810 (6th Cir. 1991). Such circumstances may well be present here. The district court's opinion indicates that Gettings knew that the EEOC had declined to investigate her Title VII claim on the basis that the Fund was not an "employer" as defined by that statute. In fact, the district court found that that is why she withdrew her charge from the EEOC. The OCRC's report further informed Gettings that she could not merge the workforces of the Union and the Fund in order to meet Title VII's jurisdictional requirements. Gettings thus had every reason to believe that her Title VII claim was barred, yet she pursued it anyway.

She also failed to articulate *any* cognizable ERISA claim, as is evident from the conflicting interpretations by the district court and the Fund regarding the exact nature of Gettings's ERISA allegations. Under ERISA, a district court "may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). This court has held that when a district court exercises its discretion in awarding attorney fees under ERISA, it should consider five factors:

(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on

other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936-37 (6th Cir. 1996) (internal citation omitted). The district court should explicitly consider all of these factors on remand.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the decision of the district court granting summary judgment for the Fund. In addition, we **VACATE** the district court's denial of attorney fees to the Fund and **REMAND** with instructions that the court reconsider the request and provide a reasoned explanation for its decision.