**GENCORP, INC., Plaintiff,**

v.

**AIU INSURANCE COMPANY, et al., Defendants,**

**American Re–Insurance Company, et al., Third–Party Plaintiffs,**

v.

**American Insurance Company, et al., Third–Party Defendants.**

No. 1:02 CV 1770.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 21, 2004.

Thomas W. Ladd, McCarter & English, Newark, NJ, for Plaintiff.

Gordon K. Walton, Margaret J. Orbon, Clausen Miller, Ellen J. Zabinski, Maria G. Enriquez, Bates & Carey, Donald E. Elder, John D. Dalton, Michael R. Gregg, Christopher J. Raistrick, Merlo, Kanofsky & Brinkmeier, Ltd., Michael J. Baughman, Cohn & Baughman, Chicago, IL, Steven G. Janik, Janik & Dorman, David L. Lester, Ulmer & Berne, Daniel F. Gourash, Robert D. Anderle, Porter, Wright, Morris & Arthur, Gary W. Johnson, Weston, Hurd, Fallon, Paisley & Howley, David J. Fagnilli, Davis & Young, David A. Schaefer, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, Amy C. Clauss, Melito & Adolfsen, New York, NY, Elizabeth Canapary, John S. Anooshian, Patricia B. Santelle, White and Williams, LLP, Philadelphia, PA, Amelia A. Bower, Charles W. Browning, Stephen P. Brown, Plunkett & Cooney, Michael D. Almassian, Bloomfield Hills, MI, for Defendants.

## MEMORANDUM OF OPINION

HEMANN, United States Magistrate Judge.

This case is before the magistrate judge on consent. Pending is the motion of plaintiff, GenCorp, Inc. ("GenCorp") for reconsideration ("Pl. mot."; Docket # 114). Defendants, AIU Insurance Company; American Home Assurance Company; American Re–Insurance Co.; Federal Insurance Co.; Mt. McKinley Insurance Company;[1] Century Indemnity Company;[2] Lexington Insurance Company; Lumbermans Mutual Casualty Company; Everest Re–Insurance Company;[3] First State Insurance Company; St. Paul Fire & Marine Insurance Co.; and Twin City Fire Insurance Company (collectively, "the defendants"), oppose this motion (Docket # 116). For the reasons given below the court overrules GenCorp's motion.[4]

### I

The court incorporates by reference its statement of the facts in its Memorandum of Opinion of October 15, 2003 ("opinion";

---

1. Mt. McKinley is the successor of Gibraltar Casualty Company.

2. Century is the successor to CCI Insurance Co., which was successor to the Insurance Co. of North America.

3. Everest is successor to Prudential Re–Insurance Company.

4. The court finds it unnecessary to hold oral argument on plaintiff's motion, having heard plaintiff argue its position on numerous other occasions.

Docket # 112). GenCorp seeks reconsideration of the court's judgment against it and argues that the court's decision was based on manifest errors of law and was made in the absence of recently-discovered evidence.

### A. Errors of law

GenCorp argues that the court committed five errors of law in reaching its decision: (1) the court misunderstood the fundamental principles of the "all sums" allocation method, (2) the court erred by concluding that GenCorp elected an allocation scheme by settling with its primary insurers, (3) the "horizontal exhaustion" scheme required by the court fails to give effect to the policy language at issue, (4) the court's ruling was premature because it overlooked essential prerequisite issues, and (5) the court overlooked GenCorp's right to obtain a declaratory judgment on coverage.

As regards GenCorp's first three assertions ((1), (2), & (3)), the court stands by its understanding and application of the law in its opinion.

GenCorp also argues that the opinion was premature because it overlooked essential prerequisite issues: (a) the dates of the continuous trigger, (b) how the "other insurance" clauses of the triggered policies affect the insurance allocation process, (c) the effect of certain policies' pollution exclusions, and (d) the inapplicability of the Genco Insurance Ltd. ("Genco") policies in calculating GenCorp's settled insurance.

■ In their motion for summary judgment ("Def. mot."; Docket # 99) defendants made certain assumptions about GenCorp's total liability and assumed that GenCorp would be entitled to indemnification for its entire liability. The defendants also asserted that they were assuming those trigger periods which were most fa-

vorable to GenCorp and which were supported by the evidence in the record. The defendants derived those periods largely from the testimony of GenCorp's expert as cited by the court in GenCorp I.[5] In opposing defendants' motion for summary judgment GenCorp offered no evidence that defendants' estimates of its liability were erroneous or uncertain. Nor did GenCorp bring forward any evidence to show that defendants' supported assumptions regarding the appropriate trigger periods were erroneous. Thus, GenCorp failed to assume its burden as the nonmoving party to oppose defendants' assertions in their summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves . . . ," *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and provide enough evidence that a reasonable jury could find for the nonmoving party, *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). GenCorp having defaulted on its opportunity timely to oppose defendants' assertions regarding the trigger period, the court sees no reason to give GenCorp an opportunity to re-litigate the matter.

■ GenCorp also asserts that the court failed to consider how the "other insurance" clauses of the triggered policies affect the insurance allocation process. Gen-Corp's assertion presumes that the court misunderstood and misapplied the law in its opinion and further presumes that any excess insurer might be found liable to GenCorp. As the court regards both of these presumptions as mistaken, Gen-Corp's assertions about "other insurance" clauses are not well-taken.

GenCorp contends that the court's opinion was premature because it failed to account for the effect of certain policies'

---

5. The Honorable David Dowd was presiding at this point.

pollution exclusions. Specifically, Gen-Corp argues that the court did not consider that a 1997 court ruling had dismissed a number of excess insurers because their policies were subject to a retroactive pollution exclusion in the underlying Genco policy. But this was not relevant to the court's opinion. Because the court's opinion determined that no excess insurer was reached by any conceivable liability faced by GenCorp, whether any of those policies contained pollution exclusions is moot.

GenCorp claims that the court overlooked the inapplicability of the Genco policies in calculating GenCorp's settled insurance. GenCorp argues the following:

> The Court's inclusion of the Genco policies in its calculation of the amount of settled insurance limits overlooked completely its prior findings in the case. Previously, the Court made clear that the settlement between GenCorp and Genco was consummated in litigation unrelated to this case and involved sites other than those for which GenCorp now seeks coverage. The Court likewise overlooked the fact that its July 23, 2003 Memorandum Opinion—which found that GenCorp's *other* settled primary and umbrella policies were exhausted—made no reference to the Genco policies. Moreover, that decision included no finding that the Genco policies had been exhausted by its settlement with Gen-Corp.

Pl. mot. at 23 (emphasis in original) (citation omitted).

As regards the court's inclusion of the Genco policies in its calculation of the amount of settled insurance, this was based on the following argument by defendants:

> Prior to and during the previous action before this Court, GenCorp and four of its primary and umbrella insurers, Liberty Mutual Insurance Company ("Liberty"), American Insurance Company ("American"), Continental Insurance Company ("Continental"), and Genco ... (collectively the "Underlying Insurers") reached settlements. The combined limits of the Underlying Insurers' settled policies are at least $64 million: $4 million total under the American policies for the years 1960 to 1966; $5 million total under the Liberty policies for the years 1966 to 1970; $22 million total under the Continental policies for the years 1960 to 1975 and $37 million total under the Genco policies for the years 1975 to 1982.

Def. mot. at 2–3 (footnotes omitted). In its opposition brief ("Pl. opp."; Docket # 109), GenCorp referred to Genco in two places:

> In 1997, the Court dismissed a number of policies based upon an alleged retroactive pollution exclusion, that was added by virtue of a settlement agreement, to two policies issued by [Genco], GenCorp's first layer umbrella insurer from 1975 to 1978 and 1979 to 1982. In these years, the language in many of GenCorp's excess policies purportedly "followed form" to the applicable Genco policy, i.e. the excess policies state that coverage is under the same terms and conditions as the underlying Genco policy. The insurers whose excess coverage "followed form" to the Genco policies subsequently moved for summary judgment, successfully, on the basis that the Genco policies, as a result of the retroactive endorsement, contain a pollution exclusion, to which the excess insurers follow form. As a result of this decision, for the periods 1975 to 1978 and 1979 to 1982, GenCorp had little insurance coverage for pollution-related liabilities.

\* \* \* \* \* \*

█ The insurers' argument also fails to consider the effect of the Court's May 20, 1997 ruling, whereby the Court dis-

missed a number of excess policies based upon an alleged retroactive pollution exclusion, which was added to two policies issued by Genco, GenCorp's first layer umbrella insurer. This decision virtually eliminated GenCorp's coverage for pollution-related liabilities for the 1975 to 1978 and 1979 to 1982 policy periods. The Court must surely consider what, if any, impact that decision would have in determining settlement credits.

Pl. opp. at 4, 6. In these passages GenCorp focused on court decisions which found that certain excess insurers had no liability to GenCorp because of a pollution exclusion in the underlying Genco policy. Nowhere in GenCorp's brief does GenCorp state that the settlement between GenCorp and Genco to which defendants referred was consummated in litigation unrelated to the then-current case or that the defendants' calculation of the combined limits of the underlying insurers' settled policies was incorrect because the Genco policy should not be included in that total. By failing to make this point timely in its opposition brief, GenCorp defaulted its argument.

As regards the court's July 23, 2003 Memorandum Opinion, that decision was made upon motion of third-party defendants Liberty, Continental, and American for summary judgment against third-party plaintiffs, the defendants in this action. The court found that because Gencorp's settlement with its primary insurers extinguished all of Gencorp's claims against them as to the issues in dispute in Gencorp I, the third-party plaintiffs in this litigation had no legal basis for asserting that the third-party defendants are "responsible" parties from whom the third-party plaintiffs may seek contribution. The court then concluded that the third-party complaint was without merit and dismissed the third-party defendants from the case. The court's decision made no reference to the Genco policies and included no finding that the Genco policies had been exhausted by its settlement with GenCorp because no such reference or finding was necessary to the court's decision. GenCorp's argument regarding the July 23, 2003 Memorandum Opinion is simply a red herring without relevance to the court's October 15, 2003 opinion.

Finally, GenCorp contends that by granting summary judgment based on the conclusion the GenCorp's liabilities could not reach the excess insurers' policies, the court ruled on whether GenCorp could present a justiciable controversy without giving GenCorp an opportunity to brief that issue. This, GenCorp argues, overlooked GenCorp's right to obtain a declaratory judgment as to coverage. But GenCorp misinterprets the nature of the court's action. The court *did* adjudicate the controversy between GenCorp and the defendants, and GenCorp lost. GenCorp's inability to reach the excess insurers' policies was dispositive of the controversy.

For these reasons the court rejects GenCorp's arguments that the court should reconsider its opinion because the opinion included errors of law which make reconsideration appropriate.

## B. New Evidence

■ GenCorp contends that the court should reconsider its opinion in light of evidence discovered after the parties submitted their briefs supporting or opposing defendants' motion for summary judgment. According to GenCorp,

[t]he Court ruled on the Insurers' motion while discovery was still ongoing. After the motion had been submitted, new material evidence was obtained through discovery. That evidence, if known to the Court when the motion was decided, would have altered the Court's conclusions. Accordingly, this

new evidence presents appropriate grounds for reconsideration.

Pl. mot. at 26. GenCorp recites $3.8 million in remediation and defense costs not considered at the time of the court's opinion.

■ When a party opposing a motion for summary judgment believes that further discovery is needed to develop the issues addressed in the motion, that party must file an affidavit pursuant to Fed. R.Civ.P. 56(f) ("R.56(f)"), to "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir.2000). Rule 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f) is the means by which a party resisting a motion for summary judgment fulfills the "obligation to inform the district court of his need for discovery ...." *Cacevic*, 226 F.3d at 488 (quoting *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir.1996)). The party seeking additional discovery must "affirmatively demonstrate ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir.1998) (internal quotation marks omitted).

The filing of a Rule 56(f) affidavit is no mere formality:

We, like other reviewing courts, place great weight on the Rule 56(f) affidavit, believing that "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." The Second Circuit Court of Appeals has similarly explained that "[a] reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit ... and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."

*Cacevic*, 226 F.3d at 488 (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996)) (citations omitted) (alterations in original). "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Cacevic*, 226 F.3d at 488 (quoting *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832–33 (10th Cir.1986)); *see also Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300 (6th Cir.2003); *Wallin v. Norman*, 317 F.3d 558 (6th Cir. 2003).

GenCorp filed its brief in opposition to defendants' motion for summary judgment on September 8, 2003. On September 17, 2003, defendants and GenCorp took the deposition of Chris Conley ("Conley"), GenCorp's vice president in charge of environmental health and safety. In their deposition notice, the defendants indicated that one of the topics to be covered in the deposition was ongoing costs and liabilities

related to the environmental claims at issue in the case. GenCorp could have told the court by way if a R. 56(f) affidavit of its need for more time before opposing defendants' motion, of the upcoming Conley deposition, and of the material facts it hoped to uncover by means of that deposition. GenCorp chose not to do so. The court will not hear, therefore, GenCorp's current assertion that the court's judgment was premature because GenCorp needed more time for discovery.

## II

For the reasons given above the court overrules GenCorp's motion for reconsideration.

**IT IS SO ORDERED.**