**NOT RECOMMENDED FOR PUBLICATION**
**File Name:  18a0613n.06**
**No. 18-3325**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NEXUS GAS TRANSMISSION, LLC, | ) | **FILED** |
| | ) | Dec 07, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF GREEN, OHIO, | ) | ON  APPEAL  FROM  THE UNITED  STATES  DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant, | ) | |
| | ) | |
| JUDY JANE HAMRICK; JOHN SELZER; ELAINE SELZER, | ) | OPINION |
| | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE:    NORRIS, STRANCH, and LARSEN, Circuit Judges

**JANE B. STRANCH, Circuit Judge.**  Ohio landowners John Selzer, Elaine Selzer, and Judy Jane Hamrick (Landowners) have been in a longstanding dispute with Nexus Gas Transmission, LLC (Nexus) regarding Nexus's right to use a 1.4-acre tract of land on Landowners' property to build part of an interstate natural gas pipeline.  During the first stage of this dispute, the Federal Energy Regulatory Commission (FERC) gave Nexus the authority to condemn private tracts of land along the pipeline's route, including Landowners' property.  Nexus then obtained a preliminary injunction in the district court requiring Landowners to give Nexus immediate access to their property.  In this appeal, Landowners argue that (1) the district court erred in issuing that injunction and (2) the court should not have issued the injunction without

first allowing further discovery and holding an evidentiary hearing. Though we acknowledge Landowners' concern for the property rights at stake in this litigation, we find no basis for vacating the district court's injunction. Because the district court properly considered the relevant factors and no additional discovery or evidentiary hearing was necessary, we **AFFIRM**.

## I.   BACKGROUND

In November 2015, Nexus asked FERC for authorization to build an interstate natural gas pipeline cutting across parts of Ohio and Michigan. FERC began lengthy notice-and-comment proceedings in response to Nexus's application. Almost two years later, FERC issued a certificate of public convenience and necessity giving Nexus permission to build and operate the pipeline.

Although Nexus soon negotiated voluntary easements on 97% of the 2,070 tracts of land that lay in the path of the pipeline, several dozen owners of land—including Landowners—refused to grant easements. Under the Natural Gas Act (NGA), if a company with a FERC certificate in hand cannot reach voluntary agreement on the terms of an easement with an affected landowner, then the company may acquire the landowner's property "by the exercise of the right of eminent domain in the district court . . . in which such property may be located." 15 U.S.C. § 717f(h). Nexus accordingly filed suit in the district court seeking to condemn the remaining landowners' properties under the NGA. Owners of the remaining properties later settled or provided immediate access, with the exception of Landowners.

In December 2017, the district court granted partial summary judgment in favor of Nexus, finding (among other things)[1] that Nexus had established its statutory right to condemn Landowners' property under the NGA. But Nexus and Landowners still could not agree on the compensation owed to Landowners for the easement. In March 2018, Nexus filed a motion requesting immediate access to Landowners' property to start construction while the parties negotiated the terms of the easement. Nexus attached an affidavit submitted by Lawrence D. Smore, the Senior Project Manager of Nexus, stating that the disputed 1.4-acre tract on Landowners' property was an integral part of Nexus's construction plan, that building around Landowners' property would cause significant delays, that Nexus would have to spend as much as $800,000 per day to retain its construction crew during those delays, and that circumventing the property would cost Nexus around $553,000 in additional construction costs.

Although the district court initially scheduled an evidentiary hearing, the court later canceled that hearing and discovery in a written order. The court stated: "At this stage, the Court sees no cause to schedule an evidentiary hearing or argument. . . . No further discovery shall be conducted on the motion absent leave from the undersigned." On April 5, 2018, the district court granted Nexus's motion and ordered Landowners to give Nexus immediate access to the property. The court also ordered Nexus to post a bond of $100,000 pending calculation of the proper compensation owed to Landowners.

---

[1] The district court's December 2017 order also gave Nexus the right of immediate access to Landowners' property for the narrow purpose of conducting certain surveys, tree felling, clearing, and environmental and utility work. Landowners appealed that injunction, but we granted Nexus's motion to dismiss the appeal on mootness grounds because Nexus had already completed those preliminary tasks by the time Landowners' appeal had reached this court. *See Nexus Gas Transmission, LLC v. City of Green*, No. 18-3113, 2018 WL 2072606 (6th Cir. Apr. 3, 2018). Nexus has not similarly moved to dismiss on mootness grounds in this appeal, so we assume that Nexus remains on the property.

In this appeal, Landowners argue that the district court (1) erred in issuing the April 5 preliminary injunction order and (2) should not have issued that order without first allowing additional discovery and holding an evidentiary hearing.[2]

## II.    ANALYSIS

### A.    Preliminary Injunction Order

We review a district court's decision to grant a preliminary injunction for abuse of discretion. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018). We will not disturb that decision unless it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (citation omitted).

District courts weigh four factors when deciding whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of

---

[2] A third party, Goldman & Braunstein, LLP (Goldman), has moved for leave to file an amicus brief. We grant this motion and have considered Goldman's relevant arguments. Goldman's principal claim is that the district could should not have granted this preliminary injunction because Congress never granted federal courts the authority to give private parties the right to take immediate possession of another's property. The Fourth Circuit rejected that very claim in *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004). Since *Sage*, dozens of courts have held that after a federal court determines the petitioner has a substantive right to condemn the disputed property, it possesses inherent equitable power to grant this type of injunction. *See, e.g.*, *Transcon. Gas Pipe Line Co., LLC v. Permanent Easements for 2.14 Acres in Conestoga Twp., Lancaster Cty., Pennsylvania*, No. 17-3075, 2018 WL 5571434, at *8 (3d Cir. Oct. 30, 2018); *Texas E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-CV-2650, 2015 WL 152680, at *4–5 (S.D. Ohio Jan. 12, 2015) (collecting cases). These cases adhere to the well-established principle that, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1392 (2015) (citation omitted); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (observing that injunctions in equity "reflect a practice with a background of several hundred years of history, a practice of which Congress is assuredly well aware . . . [and courts] do not lightly assume that Congress has intended to depart from established principles") (citation and internal quotation marks omitted). We find no such "necessary and inescapable inference" here.

an injunction." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526–27 (6th Cir. 2017) (citation omitted). These factors "simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (citation omitted). Our review of the district court's balancing of these factors is highly deferential. *See Hunter*, 635 F.3d at 233.

As an initial matter, we disagree with Landowners' claim that the district court balanced the wrong factors in its preliminary injunction order. Landowners suggest that the district court relied on the preliminary injunction standard used in *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004), which they argue "was rejected" by the Supreme Court in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). But the district court never mentioned *Sage* in its discussion of the preliminary injunction standard; instead, it cited the four factors we laid out in *McPherson*, 119 F.3d at 459. Those are the same factors we apply today—*see, e.g.*, *Hall*, 878 F.3d at 526-27; *Cooper v. Honeywell Int'l, Inc.*, 884 F.3d 612, 615 (6th Cir. 2018)—and they are entirely consistent with *Winter*. *See Winter*, 555 U.S. at 20-26. We address each factor in turn.

1.      Likelihood of Success on the Merits

The first factor looms large in this case. The ultimate merits question is whether Nexus has a substantive right to condemn Landowners' property. The NGA gives companies that right if (1) they hold "a certificate of public convenience and necessity" issued by FERC, (2) the tract of land at issue is "necessary to construct, operate, and maintain a pipe line," and (3) they are unable to negotiate a voluntary easement by contract. *See* 15 U.S.C. § 717f(h); *see also Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cty.*, 550 F.3d 770, 776 (9th Cir. 2008) (discussing the same three factors).

In its earlier order granting partial summary judgment to Nexus—decided well before the preliminary injunction order at issue here—the district court determined that Nexus had satisfied

each of these three factors. And our own review of the record strongly suggests that Nexus has established the elements necessary to condemn Landowners' property. On appeal, Landowners do not dispute that Nexus holds a FERC certificate, that the 1.4-acre tract of land is necessary to build and maintain the pipeline, and that the parties have been unable to negotiate a voluntary easement by contract. This case appears to present a question not of *whether* Nexus has the statutory right to condemn Landowners' property, but only of *when* it may exercise that right. While that distinction may be significant in other cases, it is not here. The alleged harms resulting from the district court's injunction, discussed below, do not depend on the timing of Nexus's possession. Declining to issue an injunction would serve little purpose other than to delay Nexus's access to the property and increase the cost of completing the project. The district court properly used its injunctive power to avoid that outcome. *See McGirr*, 891 F.3d at 614 ("The preliminary injunction serves an important purpose—to allow a victory by [the plaintiffs] to be meaningful.") (citation and internal quotation marks omitted).

### 2. Irreparable Harm

While Landowners do not address Nexus's likelihood of success on the merits, they do take issue with the district court's assessment of the alleged harm to Nexus absent an injunction. In finding that Nexus would suffer irreparable harm without an injunction, the district court relied on Smore's sworn statement that building around Landowners' property would cost approximately $553,000.[3] Landowners challenge that figure on the basis that it is "pure conjecture," but it is in the nature of preliminary injunctions that they rely on forward-looking evidence. As Nexus's Senior Project Manager, Smore was well positioned to estimate the cost of building around

---

[3] The district court's opinion says the cost would be "roughly $530,000." That appears to have been a typo, as the number quoted in Smore's affidavit is $553,000.

Landowners' property. The district court did not abuse its discretion in choosing to credit Smore's sworn statement.

Landowners also claim that the district court should have rejected Smore's estimate because it "contradict[ed]" a statement he made in a previous affidavit. Landowners refer to an affidavit filed by Smore at an earlier stage of this litigation, when Nexus sought access to Landowners' property for the narrow purpose of conducting "survey, tree felling, clearing, environmental, and utility" work before pipeline construction began. In that affidavit, Smore stated that Nexus "must pay the contractor move-around costs every time survey, tree felling, clearing, environmental, and utility crews are forced to move around a no access property," and estimated that the "cost at each no access property for these crews can be up to $78,750 for each property skipped." Almost six months later, when Nexus sought the broader injunction at issue here, Smore projected that skipping Landowners' property "during full mainline construction"— which "would require Nexus to demobilize and remobilize equipment and personnel around" the property—would lead to additional construction costs totaling $553,000.

These affidavits estimate two different costs—first, the cost of skipping Landowners' property during preliminary "survey, tree felling, clearing, environmental, and utility" work, and second, the cost of "demobiliz[ing] and remobiliz[ing] equipment and personnel" after "full mainline construction" has begun. Contrary to Landowners' claims, the record fully supports this distinction. Landowners are correct that both of Smore's affidavits describe activities related to full mainline construction but fail to note that the affidavits do so in an initial section that summarizes the sequential construction process for the *entire* pipeline project. This section makes clear that different construction crews are responsible for each phase of the project; Smore explains that "[a]s one specialized crew completes its work, the next crew will move into position to

complete its portion of the construction process." In the section of the first affidavit estimating the harm to Nexus absent an injunction, Smore projects that it would cost $78,750 to skip Landowners' property during only the first phase of that process—"the sequential survey, tree felling, clearing, environmental, and utility" work. The section discussing move-around costs in Smore's second affidavit, by contrast, refers to the costs associated with skipping Landowners' property "during full mainline construction." The district court did not clearly err in crediting Smore's estimates of the costs for those different services.

At any rate, Landowners do not argue that Nexus would suffer no financial harm absent an injunction; they simply dispute the dollar amount of that loss. Regardless of the precise loss amount, the record supports Nexus's claim that skipping Landowners' property would result in significant harm to Nexus. In addition to the $553,000 noted in the district court's order, for example, Smore estimated that Nexus would have to spend up to $800,000 per day to retain its construction crew during any associated delays, that those delays would increase the likelihood of Nexus missing its target in-service date for the pipeline, and that such delays would risk harming Nexus's business reputation.

Landowners further claim that even if Nexus would suffer harm without an injunction, the district court should not have considered that harm to be "irreparable" because "it is conceivable" that Nexus could deduct its move-around costs from the compensation it eventually pays Landowners. Landowners forfeited that argument by failing to raise it in the district court. Regardless, this claim assumes that the money owed to Landowners would be enough to compensate Nexus fully for all the harm flowing from denial of the injunction. *See Langley v. Prudential Mortg. Capital Co., LLC,* 554 F.3d 647, 649 (6th Cir. 2009) (noting that "fully compensable" harm may not be irreparable) (citation omitted). We find nothing in the record to

support that assumption. While it may be "conceivable" that such a set-off would fully compensate Nexus, the court did not clearly err in finding otherwise. And even if Landowners could compensate Nexus fully for its loss, that would not change the outcome of this case because, as we explain above and below, the other relevant factors also favor injunctive relief.

### 3. Harm to Others

The next factor requires us to "balance the harm that [Nexus] would face" absent an injunction "against that which [Landowners] would face if we uphold the injunction." *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009). Landowners complain that because of the injunction, they have been "forced to continue to pay the property taxes on the property occupied by Nexus without any rents being paid for the use and occupancy of the land." But these are the types of "fully compensable" harms that courts do not consider irreparable. *Langley*, 554 F.3d at 649 (citation omitted). The purpose of the pending proceedings in the district court is to calculate the proper compensation owed to Landowners for Nexus's use of the property. *See* Fed. R. Civ. P. 71.1(h). There Landowners will have the opportunity to present their position regarding what is necessary to compensate them fully.

We note also that the harm to each party must be considered alongside the likelihood that Nexus will succeed on the merits. If the plaintiff's success is certain, then harm to the defendant is usually inevitable, while harm to the plaintiff is avoidable. And in this case, the district court has already determined that Nexus has a substantive right to condemn Landowners' property. Although that order is not at issue on appeal, we conclude that there is a strong likelihood Nexus will succeed on the merits of its condemnation claim. With this same likelihood in mind, the district court reasonably decided that the balance of harms tipped in favor of Nexus. *See Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997) ("[W]e have observed that the degree of likelihood

of success that need be shown to support a preliminary injunction varies inversely with the degree of injury the plaintiff might suffer.")

### 4. Public Interest

The final factor asks whether the injunction would serve the public interest. This factor "primarily addresses impact on non-parties." *Hunter*, 635 F.3d at 244 (citation omitted). The district court found that the public interest supported a preliminary injunction here because (1) "expeditious completion of the pipeline is in the public interest," (2) Congress "gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices," and (3) FERC "carefully considered the pipeline and concluded that it will fulfill the goals detailed by Congress."

Landowners disagree with the district court's analysis for two reasons. First, they emphasize that much of the natural gas transported by the pipeline "is destined for Canada and international markets," so the benefits of the pipeline will not be "primarily" enjoyed by U.S. consumers. But the public-interest analysis does not require a balancing of the benefits inured in foreign countries against those enjoyed in the United States. That the pipeline may benefit consumers in foreign countries does not preclude a finding that it will also benefit consumers in the United States. And Landowners admit that a substantial amount of the natural gas transported by the pipeline will serve U.S. consumers.

Second, Landowners claim that the district court "merely defer[red]" to FERC's public-interest findings instead of conducting an independent assessment.[4] But the district did not simply defer to FERC. Rather, the court noted Congress's desire to provide U.S. consumers with an

---

[4] Landowners argue that FERC should not have issued Nexus a certificate of public convenience and necessity and briefly challenge FERC's statutory authority to do so. To the extent that Landowners wish to pursue a collateral attack on FERC's certificate, a separate proceeding is the proper vehicle for that challenge. *See* 15 U.S.C. § 717r(b) (spelling out the procedure for seeking review of a FERC order).

adequate and efficient supply of natural gas and recognized that FERC had "carefully considered" whether Nexus's pipeline would serve those goals. The almost 90-page order to which the district court referred—which was part of the district court record—reflected a two-year investigation and consideration of hundreds of live speakers and thousands of written comments. FERC issued that order under Congress's express directive to evaluate whether projects like this one will serve the public interest. *See* 15 U.S.C. § 717f(e) (providing that a certificate "shall be issued" upon FERC's finding that a project "is or will be required by the present or future public convenience and necessity"). District courts may reasonably credit the findings in such "carefully considered" reports, and it was not an abuse of discretion for the district court to do so here. *See Sage*, 361 F.3d at 827 (noting that FERC had issued a certificate after spending "sixteen months evaluating the need for" a pipeline project, and finding that "[i]t was therefore appropriate for the district court to weigh the public benefit of expeditious project construction in deciding that it could use its equitable power in this case").

### B.    Evidentiary Hearing

Finally, Landowners argue that the district court should have permitted additional discovery and held an evidentiary hearing before issuing the preliminary injunction. Nexus claims that "[a]ll due process arguments have been waived" because after the district court canceled the evidentiary hearing and prohibited further discovery "absent leave from the" court, Landowners "did not thereafter seek leave to conduct discovery, nor did [they] object to the order cancelling the hearing." But the district court granted Nexus's preliminary injunction motion only two days after the court canceled the hearing and discovery. Landowners could not have anticipated the district court's sua sponte cancellation order, nor could they have known that they would have only two days to seek additional discovery. We find no "waiver" on these facts.

Under Federal Rule of Civil Procedure 26(b)(1), district courts may limit discovery if, among other things, they determine that "the burden or expense of the proposed discovery outweighs its likely benefit." Such restrictions make sense, for example, where "claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (citation and internal quotation marks omitted). Likewise, "where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (citation omitted).

Landowners maintain that additional discovery and an evidentiary hearing were necessary to resolve factual disputes about (1) whether the pipeline would serve the public interest and (2) the financial harm that Nexus would suffer absent an injunction. Landowners do not explain what material factual disputes related to the pipeline's effect on the public interest. And Landowners' bases for challenging the district court's public-interest analysis—namely, that the pipeline benefited foreign consumers and that the court should not have deferred to FERC's findings—do not implicate any material factual dispute. Nexus does not dispute that the pipeline will serve foreign consumers, and even if it did, this dispute would be immaterial because the parties agree the pipeline will also serve U.S. consumers. And Landowners' claim that the district court gave too much deference to FERC is a legal argument that Landowners have addressed fully in their briefing.

We likewise find no material factual dispute related to the expense Nexus would incur without an injunction. Landowners contend that a hearing was necessary to address the "discrepancies" in the loss calculations provided by Smore in his two affidavits. As we explain

above, however, these estimates refer to two different categories of loss, and thus there was no discrepancy for the district court to resolve. And even if there were some factual dispute about the precise loss amount Nexus would suffer absent an injunction, this dispute would be immaterial because the record demonstrates that the harm to Nexus in that scenario—including project delays, the cost of retaining personnel during those delays, and additional construction costs—would be significant.

### III.     CONCLUSION

For the foregoing reasons, we **GRANT** the motion to file an amicus brief and **AFFIRM** the district court's preliminary injunction order.